IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JEFFERSON W. KELLER, III, individually and d/b/a CENTURY 21 JEFF KELLER REALTY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action File No._____ |
| v. | ) ) | |
| GREATER AUGUSTA ASSOCIATION OF REALTORS, Inc., a Georgia corporation | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

COMES NOW, Jefferson W. Keller, III and Jefferson W. Keller, III, d/b/a Century 21 Jeff Keller Realty, (hereinafter "Plaintiff"), and files this its Complaint against the Defendant Greater Augusta Association of Realtors, Inc. ("GAAR") and respectfully shows the Court the following:

## STATEMENT OF THE CASE

This is an action for injunctive relief and compensatory damages caused by Defendant's failure to abide by Final Judgment of United States of America v. National Association of Realtors, No. 05-C5140, 2008 U.S. Dist. (D. Ill. Nov. 18, 2008) 2008 WL5411637, restraint of competition and antitrust practices under

Section 1 of the Sherman Act 15 U.S.C. § 1, sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 13 and 26, and deceptive trade practices in violation of Georgia law.

PARTIES

1.

Plaintiff, Jefferson W. Keller, III, is a licensed real estate agent residing in Columbia County, Georgia.  He is a member of the Greater Augusta Association of Realtors.

2.

Plaintiff, Jefferson W. Keller, III, is the owner of Century 21 Jeff Keller Realty, a sole proprietorship located at 3944 Willowood Road, Martinez, Columbia County, Georgia, 30907 (hereinafter collectively referred to as "Keller").  Century 21 Jeff Keller Realty is a member of the Greater Augusta Association of Realtors.

3.

Defendant, Greater Augusta Association of Realtors, Inc. ("GAAR"), is a Georgia non-profit corporation, and may be served through its registered agent, Tice Brashear, at 513 Broad Street, Augusta, Richmond County, Georgia  30901.

JURISDICTION AND VENUE

4.

Defendant is subject to the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1131 and 1337(a), as this civil action arises under Federal law and commerce

and anti-trust regulations.

5.

Plaintiff also requests that the court take supplemental jurisdiction of their state law claims made under 28 U.S.C. § 1367 (a), which confers federal jurisdiction over those state law claims that are so related to the federal claims in an action that they form part of the same case or controversy under Article III of the United States Constitution.

6.

Venue is proper pursuant to 28 U.S.C. § 1391, as the Defendant is located, and the unlawful practices described herein were and continue to be committed, within the Southern District of the State of Georgia.

STATEMENT OF FACTS

7.

GAAR is a member of the Georgia Association of Realtors, a Georgia nonprofit corporation, as well as the National Association of Realtors ("NAR").

8.

The NAR is a self-regulatory organization for real estate brokerage.

9.

NAR's membership is composed of residential and commercial real estate Brokers, and others engaged in all aspects of the real estate industry, where a state

license to practice is required. Members belong to one or more of some 1,600 local Realtor boards or associations. They are pledged to a code of ethics and standards of practice, which includes duties to clients and customers, the public, and other Realtors.

10.

Through the Georgia Association of Realtors, GAAR is governed by the Code of Ethics and Standards of Practice by the NAR.

11.

A "Broker" is a person licensed by a state to provide services to a buyer or seller in connection with a real estate transaction. The term includes any person who possess a Broker's license and any agent or sales associate who is affiliated with such Broker.

12.

NAR governs the hundreds of local Multiple Listing Services (MLSs) which are the information exchanges used across the nation by real estate Brokers.

13.

A Multiple Listing Service (MLS) is a suite of services that (1) enables Brokers to establish contractual offers of compensation (among Brokers); (2) facilitates cooperation with other Broker participants; (3) accumulates and disseminates information to enable appraisals; (4) is a facility for the orderly

correlation and dissemination of listing information to better serve Broker's clients, customers and the public.

14.

A multiple listing service's database and software is used by real estate Brokers, representing sellers under a listing contract, to widely share information about properties with other Brokers who may represent potential buyers or wish to cooperate with a seller's Broker in finding a buyer for the property or asset.

15.

NAR sets the policies for most of the Multiple Listings Services. NAR has developed regulations allowing *Information Data Exchanges* ("IDX") whereby Brokers allow a portion of their data to be seen on the Internet via Brokers' or agents' websites and Virtual Office Websites ("VOW") which require potential buyers to register to obtain information.

16.

VOWs are password-protected Internet sites that allow a Broker's customers to search the MLS database on their own, using their home computers to obtain the same information that would be available in a Broker's brick-and-mortar office.

17.

Plaintiff, Keller, operates a VOW.

18.

Former NAR policies allowed participants—whether they were individual one-person Brokers or large regional companies—to limit access to some or all of the MLS data by individual Brokers (whether they were Brokers operating solely on the Internet or local competitors).

19.

In 2005, the United States Department of Justice ("DOJ") in <u>United States of America v. National Association of Realtors</u> ("NAR Litigation") filed an antitrust lawsuit against NAR alleging its MLS rules limiting the display of data were the product of a conspiracy to restrain trade by excluding Brokers who used the Internet to operate differently from traditional bricks-and-mortar Brokers.

20.

In its complaint, the DOJ alleged that NAR's former policy restrained competition by requiring NAR-affiliated MLSs to adopt rules that allowed Brokers to withhold their clients' listings from other Brokers' websites by means of an "opt out." In essence, NAR's former policy enabled traditional Brokers to block their competitors' customers from having full on-line access to all of the MLS's listings. When exercised, the opt-out provision prevented web-based Brokers from providing all MLS listings that respond to a customer's search, effectively inhibiting the search.

21.

NAR's former policy altered the rules that govern MLSs by permitting traditional Brokers to discriminate against other Brokers based on their business model, denying them the full benefits of MLS participation.

22.

The NAR Litigation was settled and the Final Judgment approved by the Court on November 18, 2008. A copy of the Final Judgment is attached hereto and incorporated herein as Exhibit "A."

23.

The Final Judgment mandates that all MLS systems allow access to Internet-based competitors. The NAR is required to treat online Brokers the same as traditional Brokers and cannot exclude them from membership because they do not have a traditional business model.

24.

The Final Judgment prohibits the NAR and its member boards and associations from adopting, maintaining, or enforcing any Rule, or enter into or enforce any agreement or practice, that directly or indirectly:

"A.    prohibits a Broker from using VOW or prohibits, restricts, or impeds a Broker who uses a VOW from providing to Customers on its VOW all of the

Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

B.      unreasonably disadvantages or unreasonably discriminates against a Broker in the use of a VOW to Provide to Customers all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

C.      prohibits, restricts, or impedes the referral of Customers whose identities are obtained from a VOW by a Broker who uses a VOW to any other Person, or establishes the price of any such referral."

25.

On or about February 6, 2009, GAAR notified Keller that they had violated GAAR rules by including their name and phone number in the public remarks section of their MLS Listing (hereinafter referred to as "Censored Information"). A copy of said notice including copies of the respective MLS Listing sheets is attached hereto and incorporated herein as Exhibit "B."

26.

Defendant, GAAR, claims Keller has committed "repeated violations" under GAAR Rules and Regulations Section 4.5 "Advertising in the MLS," which states that "[p]articipants shall not advertise in sections viewable to the public through

the Associations MLS website, including but not limited to: photos, public remarks, directions, etc".

27.

Defendant, GAAR, fined Keller pursuant to GAAR Rules and Regulations Section 1.2, which states that "[a]ny intentional misrepresentation of the facts on MLS input, such as repeated violations may be fined as follows: first offense, a certified letter will be issued notifying the Broker and agent of the violations with five days to make corrections, if corrections are not made, the Broker as well as the agent may be fined one hundred dollars ($100.00), second offense two hundred and fifty dollars ($250.00), third and subsequent violations may be fined five hundred dollars ($500.00)".

28.

Contrary to its own rules, Defendant, GAAR, through vote of its members, Beverly Pardue, Thomas M. Blanchard, III, Ryan Brashear, Tom Horner, Todd Luckey, and Nita Sawyer, fined Keller a total of $1,000.00 for a single violation of GAAR Rules and Regulations.

29.

Although Keller attempted to resolve this matter with the GAAR, GAAR, through decision of its members Beverly Pardue, Thomas M. Blanchard, III, Ryan

Brashear, Tom Horner, Todd Luckey, and Nita Sawyer, refused to change its position.

30.

Keller paid the fine assessed by the GAAR.

31.

GAAR has allowed other agents and Brokers to include their name and phone number and/or Censored Information in the property description section of the MLS Listing.  Examples are attached hereto and incorporated herein as Exhibit "C."

32.

Defendant, through Beverly Pardue, Thomas M. Blacnchard, III, Ryan Brashear, Tom Horner, Todd Luckey, and Nita Sawyer, intentionally conspired to restrain trade and commerce through voting assess a fine against Keller in knowing violation of the Final Judgment in NAR, and willfully violated Keller rights abusing their authority as members of GAAR unevenly enforcing its rules in an attempt to enhance the market position of some Brokers at the expense of others.

COUNT I
VIOLATION OF FINAL JUDGMENT IN NAR LITIGATION

33.

Keller incorporates and restates the allegations contained in paragraphs one (1) through thirty-two (32) of Plaintiff's Complaint.

34.

GAAR Rules and Regulations Section 4.5 is in violation of the Final Judgment in <u>United States of America v. National Association of Realtors</u>, No. 05-C5140, 2008 U.S. Dist. (D. Ill. Nov. 18, 2008), and Competitive Impact Statement thereunder.   A copy of the Competitive Impact statement is attached hereto and incorporated herein as Exhibit "D."

35.

GAAR Rules and Regulations Section 4.5 violates the Final Judgment, as it prohibits, restricts, or impeads Keller from providing all of the Listing Information on their VOW that Keller are permitted to provide their customers by hand, mail, facsimile, electronic mail, or any other methods of delivery.

36.

GAAR Rules and Regulations Section 4.5 violates the Final Judgment, as it unreasonably disadvantages or unreasonably discriminates against Keller in the use of a VOW to provide their Customers all of the Listing Information that they are permitted to provide to by hand, mail, facsimile, electronic mail, or any other methods of delivery.

<u>COUNT II</u>
<u>VIOLATION OF THE SHERMAN ACT</u>

37.

Keller incorporate and restate the allegations contained in paragraphs one (1)

through thirty-six (36) of Plaintiffs' Complaint.

38.

Defendant has violated of Section 1 of the Sherman Act, 15 U.S.C. § 1, which provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

39.

GAAR's actions, and Rules and Regulation Section 4.5, are in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by suppressing competition from real estate Brokers who use the Internet to deliver real estate Brokerage services.

40.

GAAR's unlawful conduct has had direct, substantial, and adverse effects on competition by eliminating real estate Brokers who use the internet to interact with customers in favor of more traditional Brokers. But for GAAR's unlawful conduct, competition within the market would result in more competition amongst Brokers and lower prices for consumers.

41.

As a direct consequence of GAAR's illegal acts, Keller has sustained losses and damages to their business and property in the form of lost commissions, sales and future business.

42.

Keller is threatened with further injury unless GAAR is enjoined from continuing the unlawful conduct alleged herein and from enforcing any other Rule or Regulation having similar purposes and effects.

43.

GAAR Rules and Regulations are enforced with the intent to restrain trade and commerce, the purpose and effect of which was to unreasonably fix or raise fees and commissions for real estate Brokers and their agents in the real estate market served by GAAR and to direct business in that market to certain real estate Brokers and their agents at the expense of others.

44.

GAAR practices constitute an unreasonable restraint on competition, the effects of which are anticompetitive. GAAR actions lack any legitimate business justification, and any purported business justifications are pretextual.

45.

GAAR's unlawful conduct substantially and adversely affects interstate commerce in the relevant market and submarkets.

46.

As a result of Defendant's actions, Defendant and certain real estate Brokers have continued to derive benefits from their wrongful conduct.

47.

Keller has experienced a significant decrease in revenues as a result of Defendant's wrongful conduct.

48.

As a result of Defendant's actions against Keller, including but not limited to prohibiting Keller from including Censored Information in his MLS Listings and other conduct alleged herein, Keller is restrained in their ability to make his services available to the public and other Brokers As a result, the public choice in the relevant market is artificially and improperly limited and there is a diminution in the quality of service offered to the public and other Brokers.

49.

The public, customers and other Brokers have been harmed as a result of the Defendant's anticompetitive conduct as described herein.

50.

Defendant and its officers willfully acquired or maintained its monopoly power in the market for real estate services in the Greater Augusta area by engaging in the ongoing anticompetitive, predatory and exclusionary acts acting on its own and through the leadership of GAAR.

51.

Keller has suffered the type of injury the antitrust laws were intended to

prevent and that flows from that which makes the Defendant's acts unlawful. The injury is cumulative in nature and ongoing. The injury reflects the anticompetitive effect either of the violation or of anticompetitive acts made possible by the Defendant's violations.

52.

Keller is uniquely well-suited to observe this harm and to enforce the laws to prevent it.

53.

As a direct and proximate result of GAAR's violation of the Sherman Act, Keller has been harmed in an amount to be proven at trial. Keller is threatened with further injury unless GAAR is enjoined from continuing the unlawful conduct alleged herein and from entering into any other Rules and Regulations having similar purposes and effects.

54.

Pursuant to U.S.C. § 15, Keller is entitled to treble their monetary damages.

COUNT III
GAAR's ACTIONS CONSTITUTE DECEPTIVE TRADE PRACTICES

55.

Keller incorporates and restates the allegations contained in paragraphs one (1) through fifty-four (54) of Plaintiff's Complaint.

56.

The Rules and Regulations of GAAR constitute deceptive trade practices in violation of O.C.G.A. § 10-1-372 and § 10-1-393 through passing off goods or services as those of another, causing the likelihood of confusion or of misunderstanding as to source of goods or services, disparaging the goods, services, or business of another by false or misleading representation of fact, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

57.

GAAR Rules and Regulation Section 4.5 allows other realtors to pass of the goods and services of Keller through listing the respective properties on their own websites causing financial damage in the loss of sales and commission as well as future business.

58.

Defendant has engaged in fraudulent acts or practices in violation of the prohibition against deceptive trade practices pursuant to O.C.G.A. § 10-1-372.

59.

Defendant has used and is using Keller's MLS Listings in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their services.

60.

Defendant's actions, as described herein, constitute unlawful, unfair, fraudulent, and deceptive business practices, and deceptive, untrue, and misleading advertising.

61.

As a result of Defendant's actions, Keller has suffered and continue to suffer and incur irreparable injury, loss of reputation, and pecuniary damages. Unless enjoined by this Court, Defendant will continue these acts, thereby causing Keller further immediate and irreparable damage.

62.

By virtue of the allegations set forth above, Keller is entitled to an injunction compelling Defendant to allow Keller to include their name and contact information in their MLS Listings.

63.

By virtue of the allegations set forth above, Keller is entitled to any actual damages, plus attorney's fees and expenses of litigation.

<u>COUNT V</u>
<u>TORTIOUS INTERFERENCE WITH CONTRACT, BUSINESS RELATIONS AND PROSPECTIVE CONTRACTUAL RELATIONS</u>

64.

Keller incorporates and restates the allegations contained in

paragraphs one (1) through sixty-three (63) of Plaintiff's Complaint.

65.

Defendant, by its intentional, willful, malicious and wrongful conduct, including the prohibition of Keller' inclusion of his Censored Information in their MLS Listings, intended to and did cause injury and damage to Keller, his goodwill and business reputation and relationships, business relations and prospective contractual relations.

66.

By the acts alleged in this Complaint, the Defendant intentionally and without justification tortiously interfered in Keller's relationship with the public and other Brokers.

67.

Defendant acted purposely and with malice with the intent to injure.

68.

Defendant's' conduct was in bad faith, without legal justification or excuse.

69.

As a result of Defendant's conduct, Keller is entitled to monetary and injunctive relief to prevent future irreparable harm.

## COUNT VI
## DECLARATORY JUDGMENT

### 70.

Keller incorporates and restates the allegations contained in paragraphs one (1) through sixty-nine (69) of Plaintiff's Complaint.

### 71.

Pursuant to 28 U.S.C. § 2201 and O.C.G.A. § 9-4-2, Keller requests a declaration that GAAR Rules and Regulations Section 4.5 is in violation of the Competitive Impact Statement and Final Judgment of United States of America v. National Association of Realtors,

## COUNT VII
## PUNITIVE DAMAGES & ATTORNEY FEES

### 72.

Keller incorporates and restates the allegations contained in paragraphs one (1) through seventy-one (71) of Plaintiff's Complaint.

### 73.

Defendant has acted in bad faith and been stubbornly litigious, warranting an award of attorney's fees to Keller for having to bring this action to assert and defend their legal rights as permitted under  15 U.S.C. § 15, and O.C.G.A. §§ 13-6-11, 9-15-14, and 9-4-9.

74.

Defendant's actions constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences. Furthermore, Defendant acted with a specific intent to harm Keller, such that there should be no limitation on punitive damages.

WHEREFORE, Plaintiff demands:

(a)    A trial by jury;

(b)    Judgment for Plaintiff in an amount to be proven at trial;

(c)    Judgment for Plaintiff of treble monetary damages pursuant to 15 U.S.C. §15;

(d)    Judgment for Plaintiff of pre- and post-judgment interest on their damages;

(e)    An injunction enjoining Defendant from continuing or resuming their unlawful and anticompetitive practices;

(f)    Judgment for Plaintiff of all costs of litigation, including reasonable attorney fees and all other expenses; and

(g)    For such other and further relief as this Court may deem just and proper.

This 8th day of April, 2010.

MULLINS LAW FIRM, P.C.


/s/ Robert A. Mullins
Georgia Bar No. 529010
Attorney for Plaintiff

MULLINS LAW FIRM, P.C.
1450 Greene Street, Suite 3600
Augusta, Georgia 30901
(706) 724-1357